**Josefina MARTINEZ NATER, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

No. 90–2043.

United States Court of Appeals, First Circuit.

Submitted Jan. 25, 1991.

Decided May 15, 1991.

Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for plaintiff, appellant.

Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Jose Vazquez Garcia, Asst. U.S. Atty., and Paul Germanotta, Asst. Regional Counsel, Dept. of Health and Human Services, on brief for defendant, appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

PER CURIAM.

The appellant, Josefina Martinez Nater, applied for and was granted Social Security disability benefits in 1984. Mrs. Martinez continued to receive benefits until July 1987, when the Secretary of Health and Human Services (the "Secretary") notified her that her disability had ended and that payments would cease come September. Mrs. Martinez challenged this determination administratively, and in January and March 1989 appeared at hearings conducted by an Administrative Law Judge (ALJ).

---

After hearing testimony from Mrs. Martinez, a medical advisor and a vocational expert, the ALJ determined that Mrs. Martinez' disability had indeed ended in July 1987, and that she was no longer entitled to benefits. The district court affirmed the ALJ's decision, and this appeal followed.

## I

At the time of her termination hearing Mrs. Martinez was 49 years old. She had a high school education. Before she became disabled, she had worked as a supervisor in a hotel room-service department. The Secretary had declared her disabled in 1984 because at the time she suffered from asthma that was serious enough to "meet or equal" the severity of the listing for asthma contained in Part 404, Subpart P, Appendix 1, Section 3.03 of the Secretary's regulations.

Mrs. Martinez had been hospitalized several times in 1984 for treatment of her asthma. The doctors who examined and cared for her described a significant respiratory problem. Dr. Luina, her treating pneumologist, for example, reported in August and September 1984 that Mrs. Martinez' lungs displayed the presence of sibilances, rhonchi and chronic wheezes, all indications of a serious asthmatic condition. Similarly, Dr. Leon, a pneumologist who examined Mrs. Martinez in September 1984, reported that she suffered from asthma attacks on an almost-daily basis, and was living in a "continuous state of dyspnea [shortness of breath], with marked cough, chest wheezes, and chest tightness on minimal effort," and Dr. Pagan, who also examined Mrs. Martinez in September 1984, found wheezing, rhonchi and rales in both lungs.

Mrs. Martinez continued to suffer through 1985 and 1986, requiring hospitalization at least five times during those two years. Between July 1987 and her hearing in 1989 she was hospitalized only twice, in August 1987 for asthma and in January 1989 for successful treatment of a bout of pneumonia. Dr. Luina, however, reported in 1988 that Mrs. Martinez still suffered from asthma attacks on an almost-daily basis, with wheezes and rhonchi between attacks.

Other doctors who examined Mrs. Martinez during 1987 and 1988 painted a somewhat less gloomy clinical picture. Dr. Pou, a consulting physician who examined Mrs. Martinez in June 1987, related her complaints of daily asthma attacks, but observed that while she had a dry cough she displayed no shortness of breath, and no rales, wheezes or rhonchi. Dr. Sole Massana, who examined Mrs. Martinez in March 1988, found a dry cough but no shortness of breath (and concluded that she could "perform minimal exertion in allergen-free environments"), and Dr. Blanco Ramos reported in January 1988 that Mrs. Martinez suffered asthma attacks on only a monthly basis.

## II

The Secretary's regulations prescribe, and the ALJ here executed, a sequential analysis for cases involving the termination of disability benefits. 20 C.F.R. § 404.1594. Our analysis focuses on the second step: whether the claimant has an impairment, or combination of impairments, that "meets or equals" the severity of an impairment listed in Part 404, Subpart P, Appendix 1 of the Secretary's regulations. 20 C.F.R. § 404.1594(f)(2).

An impairment "meets" the listings only when it "manifests the specific findings described in the set of medical criteria" for a particular listed impairment. Social Security Ruling (SSR) 83–19, West's Social Security Reporting Service (Rulings Supp. Pamph.1988) 90, 91–92. An impairment "equals" a listed impairment when the set of symptoms, signs and laboratory findings in the medical evidence supporting the claimant "are at least equivalent in severity to the set of medical findings for the listed impairment." *Id.* at 92. Such equivalency may occur where the claimant suffers from an impairment for which a listing exists and, while "one or more of the specified medical findings is missing from the evidence[,] ... other medical findings of equal or greater clinical significance and

relating to the same impairment are present in the medical evidence." *Id.*[1]

The relevant listing in this case is contained in Section 3.03 of Appendix I. Under it, a person suffering from asthma is disabled if she "meets or equals" either of two criteria. First, the claimant is disabled if the results of her ventilatory function studies show a forced expiratory volume (FEV) of 1.1 liter or less, and a maximum voluntary ventilation (MVV) of 44 liters/minute or less.[2] Section 3.03 A. Clinical tests of Mrs. Martinez' respiratory capacity in mid–1987 showed that she had an FEV of 1.64 liters, and an MVV of 68.5 liters/minute—below normal but above the regulatory ceiling.

A claimant also "meets" the listing for asthma if (1) in spite of prescribed treatment, she suffers "severe attacks" at least once every two months, or on average six times a year, *and* (2) she has episodes of "prolonged expiration with wheezing or rhonchi on physical examination between attacks." Section 3.03 B. "Severe attacks," in this context, are defined as "prolonged episodes lasting at least several hours, requiring intensive treatment such as intravenous drug administration or inhalation therapy in a hospital or emergency room." Section 3.00 C.

The ALJ noted that Mrs. Martinez had been hospitalized during the relevant period (July 1987–March 1989) only twice, in August 1987 and January 1989, and so "did not require this type of treatment"—that is, intensive treatment such as intravenous drug administration or inhalation therapy *in a hospital or emergency room*—with the frequency required by the listings. The ALJ thus found that Mrs. Martinez did not "meet" the listing for asthma.

The evidence portrays a more complicated scene. Mrs. Martinez may have been *hospitalized* only twice between July 1987 and March 1989, but she visited her pneumologist's office for something like the sort of treatment described in Section 3.00 C on numerous occasions during that time. Two "Pulmonary Questionnaires" prepared by Dr. Luina show fourteen visits "for emergency treatments due to asthma attacks" in 1987, 1988 and early 1989. The attacks lasted from 60 minutes in one case to eight hours in another; all but four lasted for two hours or more. The description of treatments is barely legible, but on at least one occasion Dr. Luina treated Mrs. Martinez with epinephrine—an indication of severe respiratory distress. Dr. Acevedo Defilio's report indicates that Mrs. Martinez had been treated at both Dr. Luina's and Dr. Blanco's offices with oral medications and "several times with" a medication administered intravenously. Finally, Mrs. Martinez testified without contradiction that she administers some sort of inhalation therapy to herself at home for almost "daily" attacks that last two to three hours.

The record therefore shows that on at least fourteen and perhaps many more occasions during an approximately two-year period, Mrs. Martinez suffered asthma attacks that lasted several hours, and that required treatment either at home or at her doctor's office with various types of remedies, including inhalation therapy, intravenous medications and at least once with epinephrine. The only immediately noticeable distinction between these attacks and the "severe attacks" defined by § 3.00 C is that Mrs. Martinez was treated either at home or in a doctor's office, rather than in a hospital. We fail to see how that distinction alone is dispositive. *See Cole v. Heck-*

---

1. "Under the concept of medical equivalence, a physician designated by the Secretary is required to decide whether the medical findings of an individual's impairment(s), although not specifically described by any listed set of medical criteria in the listing, are at least medically equal to one of the listed sets." *Id.* at 91. A medical advisor at a hearing, such as testified here, can fulfill that role. The ALJ, however, is responsible for deciding the ultimate legal question of whether the listing is met or equaled.

He is not bound by the medical judgment offered by the "designated physician," although he should receive such judgments into the record and give them appropriate weight. *Id.* at 93.

2. The relevant values vary depending on the claimant's height. The numbers given are for a person as tall as Mrs. Martinez. *See* Section 3.02 A (Table 1).

*ler,* 587 F.Supp. 496, 497 (W.D.N.Y.1984) (claimant "equalled" listing for asthma where he suffered twice the required number of yearly severe attacks, although he had learned over the years how to self-administer inhalation therapy needed to treat them at home). The condition described by the medical evidence may not have "met" the listing in a finicky but technically accurate sense, but it appears on the evidence before us to have "equalled" the listing.

The ALJ did not adequately account for this apparent equivalence.[3] If he is going to proceed past this stage of the sequential analysis on remand, he must justify his ruling in greater detail, either (1) by making specific *factual* findings that explain how the attacks referred to in the record were substantively different (and less "severe") than those contemplated in the listing, or (2) by setting forth a *legal* conclusion that explains how asthma attacks which require emergency treatment with intravenous medication or inhalation therapy at home or in a doctor's office are of lesser "clinical significance," solely by virtue of the locus of treatment, than attacks which are treated in exactly the same fashion in a hospital setting.

The ALJ's decision made no reference at all to the second criterion of Section 3.03 B: that the claimant display "prolonged expiration with wheezing or rhonchi on physical examination between attacks." We note that in a Pulmonary Questionnaire dated June 11, 1987, Dr. Luina reported the presence of both wheezes and rhonchi between attacks. On September 14, 1987, he again noted the presence of wheezes and rhonchi, and on January 21, 1988 he noted expiratory wheezes.[4] Dr. Luina did not expressly indicate the presence of "prolonged expiration" in any of these reports, but it is not immediately clear from the listing whether "prolonged expiration" denotes a separate, independently-necessary sign or symptom, or rather a general category, of which wheezes and rhonchi are specific examples, and not a separate requirement. The ALJ can explore this question on remand, and if he learns that "prolonged expiration" is a separate and necessary symptom under the listing, can determine (a) whether Mrs. Martinez ever displayed such a symptom, and (b) if not, whether episodes of wheezing and rhonchi between attacks, in the absence of "prolonged expiration," nevertheless "equal" the listing.

The decision of the district court is *vacated* and the case is *remanded* with instructions to remand to the Secretary for further proceedings consistent with this opinion.

---

**3.** The record here contains four items that can be construed as the supporting "medical judgments" required by SSR 83–19: (1) a "supplemental statement," supplied by the Puerto Rico Disability Determination Service, (2) a note signed by Dr. Nieves, a non-examining physician who had prepared an RFC assessment of Mrs. Martinez, (3) a handwritten response to a Medical Opinion Request, signed by Dr. Carlos Acevedo Defilio, another non-examining physician, and (4) the testimony of the medical advisor, Dr. Jose Ramirez Rivera, who stated that "[a]s of June '87, she does not fulfill the listings." None of these doctors, however, came any closer than the ALJ to explaining *why* Mrs. Martinez' impairment fell short of equalling the listing.

**4.** Similarly, Dr. Acevedo Defilio's report noted the presence of wheezes and rhonchi between attacks. On the other hand, Dr. Pou examined Mrs. Martinez on June 18, 1987 and found no wheezes or rhonchi. On March 1, 1988 Dr. Sole Massana observed a constant irritant cough but did not report wheezes or rhonchi. The fact that Mrs. Martinez did not display wheezes or rhonchi on two occasions during the relevant period, however, does not mean that she *never* displayed them, and we do not read the listing to require that wheezing or rhonchi be omnipresent during the lulls between attacks.