**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANITA BARRIER,
Plaintiff-Appellant,

v.

No. 96-2748

DONNA E. SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, Chief District Judge.
(CA-94-53-5-V)

Submitted: January 13, 1998

Decided: January 27, 1998

Before HAMILTON, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

M. Alan LeCroy, DANIEL & LECROY, P.A., Morganton, North
Carolina, for Appellant. Mark T. Calloway, United States Attorney,
James M. Sullivan, Assistant United States Attorney, Charlotte, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Anita Barrier appeals from the district court order granting the Secretary's motion for summary judgment and dismissing her action, and affirming the Secretary's decision denying social security benefits. On appeal, Barrier alleges that the district court failed to give proper weight to her treating physicians' opinions and that her asthma attacks equaled the severity contemplated in the medical listing. Finding no error, we affirm.

Barrier is a forty-five year old woman with a two-year associate degree in early childhood education. At the time of the alleged disability, she was employed as a weaver with Rospatch Labels. She filed an application for disability insurance benefits on January 17, 1992, alleging that she became disabled on July 18, 1991. The alleged cause of her disability is a severe asthmatic condition. The administrative law judge (ALJ) found that Barrier suffered from severe asthma, but that her impairment did not meet or equal the listing level for presumptive disability; that she was capable of performing light work with the restriction that she not be exposed to irritants which could exacerbate her asthma; that she was capable of returning to her previous occupation as a teacher's aide, and therefore was not disabled within the meaning of the law to receive disability benefits. Barrier requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied Barrier's request for review. The ALJ's decision then became the Secretary's final decision.

Barrier filed a complaint in the district court challenging the final decision of the Secretary. The parties filed cross motions for summary judgment. The district court granted the Secretary's motion and affirmed the decision of the Secretary. This appeal followed.

We review the Secretary's final decision to determine whether it is supported by substantial evidence and whether the correct law was

applied. See 42 U.S.C.A. § 405(g) (West Supp. 1997); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We do not re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. See Hays, 907 F.2d at 1456.

Barrier first argues that her asthmatic condition meets the listing for asthma in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.03B (1993). Thus, Barrier contends that she should have been found disabled at step three of the sequential analysis. The evidence is to the contrary. To meet the requisite level of severity under § 3.03B, the claimant must experience:"[e]pisodes of severe attacks (See 3.00C), in spite of prescribed treatment, occurring at least once every 2 months or on an average of at least six times a year, and prolonged expiration with wheezing or rhonchi on physical examination between attacks."

Under § 3.00C, when a respiratory impairment is episodic in nature, as may occur in complications of asthma, the frequency and intensity of severe episodes, despite prescribed treatment, are important criteria for determining the level of impairment. Documentation for episodic asthma should include the hospital or emergency room records indicating the dates of treatment, clinical findings on presentation, what treatment was given and for what period of time, results of spirometry and arterial blood gas studies (ABGS), and clinical results. Severe attacks of episodic asthma, as those listed in section 3.03B, are defined as prolonged episodes lasting at least several hours, and requiring intensive treatment such as intravenous drug administration or prolonged inhalation therapy in a hospital or emergency room. See 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.00C (1993).

Barrier argues that the district court failed to give proper weight to the opinions of her treating physicians and that the record did not contain persuasive contradictory evidence to discount the treating physicians' opinions. The ALJ properly accorded great weight to Barrier's treating physicians, Drs. Schneider and Inglefield, regarding their

3

assessment of Barrier's physical limitations. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Although Drs. Schneider and Inglefield treated Barrier, the ALJ was entitled to disregard their opinions in the face of persuasive contradictory evidence. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986).

Dr. Schneider had the most extensive role in Barrier's treatment. The medical records generally showed that Barrier experienced recurrent episodes of asthmatic bronchitis which was occasionally exacerbated by immunotherapy. Barrier showed general improvement and responded well to medications. Dr. Schneider noted an onset date of July 18, 1991. Several doctors examined Barrier in the next few years and the record reflects that the asthmatic episodes were related to environmental factors and were reversible. The doctors noted that Barrier responded well to medications and that she could withdraw from using them.

In November 1991, Dr. Schneider referred Barrier to Dr. Inglefield for allergy injections. Dr. Schneider continued to follow Barrier and noted that her lungs were fairly clear. Also during that time Dr. Harris, a pulmonary specialist, examined Barrier at the request of Barrier's employer. Dr. Harris found that Barrier's total lung capacity was normal, and after bronchodilator therapy, there was only mild abnormality. Dr. Harris concluded that there was no permanent impairment. In March 1992, Dr. Schneider noted that Barrier was doing "fairly well" and that her lungs were "fairly clear," although Barrier suffered from a sinus infection.

In April 1992, Dr. Inglefield examined Barrier for immunotherapy treatment and found her chest to be clear and pulmonary functions normal. Dr. Inglefield began immunotherapy treatment. In June 1992, Dr. Schneider again examined Barrier for asthmatic bronchitis which was exacerbated by an allergy shot administered the day before by Dr. Inglefield. Dr. Schneider gave Barrier an injection of Depo-Medrol, a steroid used primarily for its anti-inflammatory effect, for her reaction to the allergy shot. In June 1992, Barrier again experienced an asthmatic episode with wheezing, caused by an anaphylactic reaction to an allergy shot. After the use of a bronchodilator used for relief from acute attacks of bronchospasm, Barrier's wheezing improved. Approximately one week later, Dr. Schneider noted that Barrier still

4

developed sudden onsets of shortness of breath which were relieved by expectorating mucus. Dr. Schneider also noted, however, that Barrier's lungs were clear with the exception of a few scattered wheezes and rhonchi.

On December 9, 1992, the ALJ held a hearing with both parties represented. The above medical records were entered into evidence. The only doctor to testify at the hearing was Dr. Fitz, a medical examiner called by the Secretary. Dr. Fitz testified that he had reviewed the exhibit file, listened to Barrier's testimony at the hearing, and was familiar with the disability regulations.* Dr. Fitz opined that Barrier's symptoms and conditions did not meet the requisite level of severity under the asthma listing.

During the hearing, Dr. Fitz explained to Barrier's attorney that § 3.03B incorporates § 3.00C into it and therefore to be found disabled at this step in the sequential process, the asthma attacks must meet the level of severity specified in § 3.00C. Barrier's attorney was not cognizant of the inter-relation between the two sections, and the ALJ allowed the record to remain open at the conclusion of the hearing so this issue could be addressed.

Drs. Schneider and Inglefield wrote letters after the hearing to be submitted as evidence for Barrier's application. Dr. Schneider opined that Barrier was "severely disabled due to her asthma." In support of her finding, Dr. Schneider stated that she administered injectable steroids at her office on several occasions. She also stated that the treatments administered in her office and Barrier's use of a hand-held inhaler at home constitute similar treatment as that administered in an emergency room, and therefore Barrier should be found disabled according to the listing. She also noted that Barrier's attacks may have warranted an emergency room visit, but that Barrier chose to manage these episodes at home. The medical records entered into evidence reflect, however, that Dr. Schneider only administered inject-

_____

*In its memorandum and order, the district court incorrectly stated that Dr. Fitz examined Barrier. Although Dr. Fitz did not conduct a physical examination, his statements are based upon the medical records submitted by Barrier as exhibits.

5

able steroids once, during an episode precipitated by an anaphylactic reaction to an allergy shot.

Dr. Inglefield's letter, also written after the hearing, criticized the Social Security disability regulations but stated that Barrier's asthmatic episodes met the requisite level of severity. Dr. Inglefield acknowledged, however, that he had never seen Barrier during a full-blown asthma attack. He also noted that Barrier's use of an in-home nebulizer constituted the same type of treatment that she would receive in an emergency room setting.

The medical records reflect that Barrier did not receive intravenous drug administration or inhalation therapy in an emergency room or hospital setting. While Dr. Schneider administered one intravenous steroid treatment, her records do not show that"on several occasions [Barrier] had been given injectable steroid in the office," as her letter assessing disability states. Dr. Schneider's assessment in the letter generally is not consistent with her treatment notes.

Dr. Fitz testified that Barrier's self-administered treatment would not be sufficient to treat an attack of the severity contemplated by the Act to qualify as disabling. In Dr. Fitz's opinion, the home use of a nebulizer does not constitute the kind of intensive treatment required by the Act. A medical examiner's testimony may provide substantial support for an ALJ's finding that a claimant is not impaired. See Atterberry v. Secretary of HHS, 871 F.2d 567, 570 (6th Cir. 1989). Dr. Fitz's testimony may therefore constitute substantial evidence supporting the ALJ's ruling.

Barrier relies upon Martinez Nater v. Secretary of HHS, 933 F.2d 76, 78-79 (1st Cir. 1991), in arguing that a severe attack, as required by § 3.03B, may not require documentation of emergency room or hospital treatment if the claimant can demonstrate that the attacks were equivalent in severity to an attack that required emergency room or hospital treatment. See Martinez Nater, 933 F.2d at 78-79. Martinez Nater is distinguishable from this case. The claimant in Martinez Nater had two prior hospitalizations and fourteen emergency office visits to manage asthma attacks. Intravenous drug therapy was required to restore normal breathing. Barrier's case does not demonstrate an equivalent severity, frequency, duration or treatment.

6

The Secretary also relied upon the results of four other physicians in determining that Barrier did not meet the requirements of the listing. The non-treating physicians made fact-based statements and gave supported opinions in determining that Barrier's asthma is not of a severely disabling nature. Dr. Schneider's office notes consistently refer to Barrier's condition as reversible and exacerbated by her work environment and other factors. The other physicians also noted a correlation between Barrier's work environment and her condition.

We find that the ALJ properly relied upon the medical results and opinion of non-treating physicians. Dr. Schneider and Dr. Inglefield made conclusory opinions that Barrier was disabled under the meaning of the law. Because their opinions are not supported by the medical evidence in the record, their opinions were properly discredited. In these circumstances, we find that the ALJ was entitled to credit a contradictory assessment of Barrier's physical abilities and that substantial evidence supported the ALJ's finding of no disability.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED