**Spear v. Social Security Admin.      CV-97-096-B     06/05/98**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE


<u>**Donald A. Spear**</u>


    **v.**                                                    C-97-096-B


<u>**John J. Callahan, Ph.D., Acting Commissioner,**</u>
<u>**Social Security Administration**</u>



### <u>MEMORANDUM AND ORDER</u>

Donald A. Spear suffers from a degenerative disc disease affecting his lower back.  Spear applied for Title II Social Security Disability Income ("SSDI") benefits in June 1994, alleging that he was unable to work because of his back condition and the resulting pain his condition causes.  The Social Security Administration ("SSA") denied Spear's application at each stage of administrative review, rendering a final decision denying the application in February 1997.

Spear brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g)(West Supp. 1997), seeking review of the SSA's final decision to deny him SSDI benefits.  He asserts that the SSA Administrative Law Judge ("ALJ") who reviewed the case erred in two respects, namely that: (1) the ALJ should have found that Spear's impairment meets or equals the criteria of the impairments listed in the SSA regulations; and (2) even if his impairment does not meet or

equal the severity of a listed impairment, the ALJ should have found that Spear's impairment causes him pain so as to reduce his residual functional capacity to the point where he cannot perform his past relevant work.

For the reasons that follow, I reject both of Spear's contentions and, thus, affirm the SSA's denial of Spear's application for SSDI benefits.

## I.  FACTS[1]

### A.  Spear's Health Problems

Spear was born on June 25, 1934, and was 61 years old at the time of the ALJ hearing.  He has received a high school education and his past work experience includes employment as a skilled machinist/millwright, an automobile mechanic, and a deputy director of a municipal public works department.  Spear has not worked since March 15, 1992.

#### 1.  Medical History Prior to Alleged Onset Date

Prior to March 1992, Spear had a longstanding history of chronic, periodic lower back pain.[2]  The earliest medical record

---

[1]  Unless noted otherwise, the following facts are taken from the Joint Statement of Material Facts submitted by the parties to this action.

[2]  Spear has also experienced episodic pain in his wrists, arms, neck, and shoulders.  In June 1979, he was treated for pain in his right wrist.  In March 1980, he was treated for neck and shoulder pain.  A physical examination found no limitation of motion or atrophy of these areas, but the examination did reveal a decrease in sensation and reflexes.  Spear's physician diagnosed possible bursitis and fibrositis.
During the first half of 1986, Spear experienced left shoulder pain.  An examination revealed some arthritic changes

of this pain dates from December 1975, when Spear was hospitalized after complaining of back pain as well as numbness and weakness in his legs. An x-ray of his lumbar spine showed no abnormal conditions, but a lumbar myelogram did reveal a small disc herniation at the L5-S1 intervertebral level and a possible lesion on the disc at the L3-L4 intervertebral level. After a follow-up visit in January 1976, Spear's physician stated that Spear only needed to be seen on an outpatient basis.

Spear did not require medical attention for his back again until January 1978. At that time, his treating physician prescribed a course of Valium. Spear next required medical attention for his back in March 1981. His doctor prescribed bed rest as well as Valium and recommended that, following his discharge, Spear could gradually resume his normal activities.

Spear experienced another flare up of back pain in May 1987 for which his doctor once more prescribed bed rest as well as pain and antispasmodic medications. An x-ray of Spear's lumbar spine showed no abnormal conditions, but a CT scan did reveal a small disc herniation at the L4-L5 intervertebral level with circumferential bulging of the disc. Spear was discharged from

---

and tenderness in his shoulder joint, causing a loss to his range of motion, but no swelling. Spear's physician noted that the medication prescribed to alleviate the pain was not successful in doing so but also noted that some of Spear's continued pain resulted from Spear trying to do "too much."

In December 1990, Spear's physician examined him for right shoulder and arm pain, concluding that the pain was likely the result of tendinitis or bursitis. The examination revealed weakness and tenderness but found no calcific depositions and no major arthritic changes. The doctor prescribed Motrin as a pain killer.

the hospital after one week and, at his two-month post-spasm check up, his physician stated that Spear should be seen only as needed.

In May 1988, Spear had a similar episode of back pain for which his doctor again prescribed bed rest and medication. Spear requested no medication for pain at the time of his discharge. In January 1989, while hospitalized for dizziness, nausea, and chest pain, plaintiff injured his back for which his doctor again prescribed bed rest and medication. Upon his discharge from the hospital, Spear's physician recommended that Spear should be seen only as needed.

After his January 1989 back spasm, Spear underwent several screening procedures to determine if back surgery was warranted. The procedures included an MRI scan, a lumbar myelogram, and a CT scan. Each revealed some degenerative disc disease at the L2-L3, L3-L4, L4-L5, and L5-S1 intervertebral levels with bulging annuli noted at each level. None of these screening techniques identified a discrete focal disc herniation, however, even at the L4-L5 intervertebral disc level where the May 1987 CT scan had identified a herniation. Because Spear's doctors could not identify the specific intervertebral level which was producing pain, they decided against surgery.

Spear next experienced significant back pain in September 1990. As on previous occasions, his treating physician prescribed bed rest as well as pain and antispasmodic medications to be followed by gradual mobilization. In January and February

1991, Spear had more back pain and, again, was treated with bed rest and medication.

In July 1991, Spear's treating physician evaluated his condition finding that because his symptomology was mild and because he was active (e.g., able to walk three miles per day and perform back exercises), he recommended against treating the patient with an epidural block with steroids, instead concluding that Spear should be seen only as needed. In January 1992, he had more back pain and again was treated with bed rest and medication.

### 2. Medical History after Alleged Onset Date

Spear did not receive any treatment for his back for 18 months after March 15, 1992, the alleged onset date of his inability to work. In September 1993 and January 1994, he experienced episodes of back pain and was treated with bed rest and medication. At follow-up appointments in May and July 1994, Spear's physician did not find any changes in his back condition. The physician recommended that Spear exercise to lose weight and that he be seen only as needed. In August 1994, plaintiff experienced another episode of back pain and was treated with bed rest and medication. At a follow-up appointment in October 1994, Spear's physician took a lumbar x-ray which did not show any change in his condition.

## B. **Administrative Review of Spear's Application**

Spear applied for SSDI benefits in June 1994, alleging that he was unable to work because of his back condition and the

resulting pain his condition causes.

In September 1994, a non-examining, State of New Hampshire Disability Determination Services ("DDS") physician reviewed Spear's entire medical record to date and determined that despite his medical condition, Spear retained the ability to: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) sit, stand, and walk for up to six hours per day; (3) occasionally climb, balance, stoop, kneel, crouch, and crawl; and (4) push and pull in unlimited fashion. This evaluation was confirmed in its entirety by another DDS physician in December 1994.[3] As a result, the SSA denied Spear's application both upon initial agency review and upon resubmission of his application for agency reconsideration.

Following these denials, plaintiff brought his case before an ALJ. The ALJ who reviewed the case found that Spear suffered from a severe impairment in the form of degenerative disc disease but that the impairment did not meet or equal a listed condition for the purposes of finding him disabled. In addition, the ALJ found that based on the medical evidence and Spear's testimony regarding his daily activities, Spear had the capacity to perform a full range of light work activities as long as these activities did not require lifting and carrying more than 20 pounds occasionally and 10 pounds frequently. Further, the ALJ found that Spear's pain was not so constant, severe, or disabling as to

_____

[3] The facts relating to the DDS physicians' review of plaintiff's medical record are drawn from the administrative record itself.

-6-

have a significant impact on his performance of a full range of light work activities. Consequently, because the ALJ found Spear was able to perform light work activities including his past relevant work, the ALJ declined to find that Spear's impairment entitled him to receive SSDI benefits.

Spear then requested an Appeals Council review of the ALJ's decision. With the Appeals Council's February 1997 rejection of Spear's request for a review, the council rendered a final decision regarding the application on behalf of the Commissioner of the SSA. Spear now appeals the Appeals Council decision to this court.

## II. <u>STANDARD OF REVIEW</u>

After a final determination by the Commissioner denying a claimant's application for benefits and upon a timely request by the claimant, this court is authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the Commissioner's decision. <u>See</u> 42 U.S.C.A. § 405(g). The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence. <u>See</u> <u>Irlanda Ortiz v. Secretary of Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991); 42 U.S.C.A. § 405(g). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence.

See <u>Irlanda Ortiz</u>, 955 F.2d at 769.  Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'"  <u>Id.</u> (quoting <u>Rodriguez v. Secretary of Health and Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

However, if the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary.  <u>See</u> <u>Carroll v. Secretary of Health and Human Services</u>, 705 F.2d 638, 644 (2d Cir. 1983); <u>see also</u> <u>Slessinger v. Secretary of Health and Human Services</u>, 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.")  I apply these standards in reviewing the issues plaintiff raises on appeal.


## III.  <u>DISCUSSION</u>

Spear asserts that the ALJ who reviewed the case erred in two respects.  First, Spear argues that the ALJ should have found him disabled because his back impairment either meets or equals the criteria of the back impairments listed in the SSA regulations.  Spear contends that the ALJ's decision to the contrary is not supported by substantial evidence.

Second, Spear asserts that even if his back impairment does not meet or equal the severity of a listed impairment, his impairment causes him a great enough level of pain so as to

reduce his residual functional capacity to the point where he cannot perform his past relevant work.  Spear argues that the ALJ erred in finding otherwise and, therefore, erred in finding Spear ineligible to receive SSDI benefits.  Again, Spear contends that the ALJ's decision is not supported by substantial evidence.  I address each of plaintiff's contentions in turn.

## A.    Does Plaintiff's Impairment Meet or Equal the Severity of a Listed Impairment?

In making a determination regarding whether a claimant is disabled, an ALJ must use a five-step sequential analysis.[4]  See 20 C.F.R. § 404.1520.  At step three of the sequential analysis, the ALJ evaluates the claimant's condition under the criteria described in the SSA regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1").  See 20 C.F.R. § 404.1520(d).  The claimant bears the burden of proving that his condition meets or equals the criteria of an impairment listed in Appendix 1.  See Dudley v. Secretary of Health and Human Services, 816 F.2d 792, 793 (1st Cir. 1987).  If the claimant meets his burden at step three, the ALJ must find the claimant is disabled; otherwise, the

---

[4]  The ALJ is required to consider the following five steps when determining if a claimant is disabled:
(1) whether the claimant is engaged in substantial gainful;
(2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
(3) whether the impairment meets or equals a listed impairment;
(4) whether the impairment prevents or prevented the claimant from performing past relevant work;
(5) whether the impairment prevents or prevented the claimant from doing any other work.
See 20 C.F.R. §§ 404.1509, 404.1520.

ALJ must proceed to step four in the evaluation process and assess whether the claimant's impairment prevents him from performing his past relevant work. See id.; 20 C.F.R. § 404.1520(d), (e).

1.    Meeting a Listed Impairment

A claimant cannot show his impairment "meets" the requirements of a listed impairment simply by showing he has a listed diagnosis. See 20 C.F.R. § 404.1525(d). Rather, the claimant must establish that he suffers from the specific medical findings described for that impairment. See Martinez Nater v. Secretary of Health and Human Services, 933 F.2d 76, 77 (1st Cir. 1991). If the claimant's medical findings fall below or are different from those listed for the impairment, the claimant has not met the requirements of the listed impairment. See id.

In the instant case, plaintiff argues that his spine impairment meets the criteria of the spine impairments described in Section 1.05(C)[5] of Appendix 1. However, the record reveals that while Spear has had a dozen episodes of pain-causing lower back muscle spasm for which he has been hospitalized over the past two decades, none of these episodes has satisfied the three-month-minimum durational requirement mandated by Section 1.05(C).

_____

[5]   Section 1.05(C), which governs the vertebrogenic disorders suffered by plaintiff, requires the disorders to be accompanied by "[p]ain, muscle spasm, and significant limitation of motion in the spine" as well as by "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05(C)(1), (2). In addition, Section 1.05(C) requires that these symptoms persist "for at least 3 months despite [the] prescribed therapy and [are] expected to last 12 months." Id.

To the contrary, the record reveals that Spear's episodes of lower back muscle spasm responded well and quickly to treatment, each abating sufficiently to allow him to be discharged from the hospital after at the longest a one-week period of bed rest and a course of anti-inflammatory and antispasmodic medication. See, e.g., Adams v. Bowen, 833 F.2d 509, 511 (5th Cir. 1987) (where claimant's lower back muscle spasm responds well and quickly to treatment, claimant's impairment cannot be said to meet the durational requirement of Section 1.05(C)).

In addition, at or shortly after his discharge from the hospital, plaintiff's physicians routinely noted that he did not need to be under continuing observation but could return to his pre-spasm activities. That Spear's physicians never prescribed a treatment plan calling for ongoing monitoring indicates that his debilitating back spasms had subsided by the time of discharge and, thus, did not persist for the requisite three-month period. See, e.g., Irlanda Ortiz, 955 F.2d at 769 (lack of regular monitoring evidence of intermittent nature of debilitating muscle spasm).

Finally, after each spasm, Spear did return to his pre-spasm activities -- i.e., either to his pre-spasm employment or his pre-spasm performance of household chores, shopping, and hobbies. This further indicates that each of plaintiff's episodes of debilitating muscle spasm ended approximately at the time of discharge rather than persisting for the requisite number of months. See, e.g., Barrientos v. Secretary of Health and Human

-11-

<u>Services</u>, 820 F.2d 1, 3 (1st Cir. 1987) (claimant's statement that she could perform household chores was inconsistent with claim of continuous presence of severe back muscle spasm).

Thus, because after each occasion of back spasm Spear was discharged from the hospital after one week at the longest, was told that he need not seek medical attention for his back unless he experienced another period of spasm, and returned to his pre-spasm activities, I find that substantial evidence exists in the record supporting the Commissioner's finding that Spear's impairment does not meet Section 1.05(C)'s durational requirement.

2.    <u>Equaling a Listed Impairment</u>

Even if a claimant cannot show that his specific impairment meets the criteria of a listed impairment, the claimant can still establish complete disability at step three of the five-step sequential analysis by showing that his overall medical condition produces effects "at least equal in <u>severity and duration</u>" to those of a listed impairment.  20 C.F.R. § 404.1526(a) (emphasis added); <u>accord</u> <u>Martinez Nater</u>, 933 F.2d at 77-79.  Where the claimant's primary impairment by itself does not meet the requirements of a listed impairment, the claimant may point to the combined effect of his various impairments in making his equivalency showing.  <u>See</u> <u>Ortiz v. Secretary of Health and Human Services</u>, 890 F.2d 520, 525 (1st Cir. 1989).  To prevail in an equivalency showing, the claimant must establish that his impairments produce effects equal to each of the criteria of the

pertinent listed impairment.  See Marciniak v. Shalala, 49 F.3d 1350, 1353 (8th Cir. 1995) (citing Sullivan v. Zebley, 493 U.S. 521, 531 (1990)).

Here, plaintiff cannot show that his back impairment by itself meets the three-month-minimum muscle spasm requirement of Section 1.05(C).  Therefore, to show disability at step three of the five-step analysis, Spear must establish that a combination of his impairments produces an effect equal in severity and duration to this requirement.  In attempting to do so, Spear implicitly argues that his back impairment in combination with the pain he has experienced in his shoulders, neck, arms, and wrists produces discomfort equal in severity and duration to the three-month-minimum muscle spasm requirement of Section 1.05(C).

However, the record does not show Spear ever experienced a level of non-back discomfort that, even when considered in combination with his back impairment, could equal the severity or duration of the three-month-minimum muscle spasm requirement of Section 1.05(C).  For instance, the fact that plaintiff's treatments for the pain in his shoulders, neck, arms, and wrists were never part of an ongoing treatment plan indicates an absence of severe pain of the requisite three-month duration.  See, e.g., Irlanda Ortiz, 955 F.2d at 769 (lack of plan for ongoing treat- ment indicates an absence of debilitating pain).  Additionally, the record does not reveal that plaintiff's non-back pain ever disrupted the performance of his regular activities (either in the form of employment or in the form of housework, shopping, and

-13-

hobbies), again indicating an absence of severe pain of the requisite three-month duration.  See, e.g., Barrientos, 820 F.2d at 3 (claimant's performance of light housework indicates an absence of debilitating pain).

Thus, I find that there is substantial evidence in the record to support the ALJ's decision that Spear's impairments, even when considered in combination, do not produce effects equal in severity or duration to Section 1.05(C)'s three-month-minimum muscle spasm requirement.  Consequently, the ALJ did not err in determining Spear lacked an impairment that met or equaled the severity of a listed impairment and properly proceeded to step four of the five-step sequential evaluation.

## B.    Does Plaintiff's Pain Prevent Him from Performing Past Relevant Work?

Once an ALJ has determined that the claimant's impairment does not meet or equal the criteria of a listed impairment, the ALJ proceeds to step four of the five-step sequential evaluation. See Dudley, 816 F.2d at 794; 20 C.F.R. § 404.1520(e).  At step four, the ALJ determines whether the claimant's impairment prevents him from performing his past relevant work.  See id. Such a determination requires that the ALJ make: (1) an assessment of the claimant's residual functional capacity ("RFC") -- i.e., what the claimant can still do despite his impairment; and (2) an assessment of the requirements of the claimant's past relevant occupations.  See Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  If the ALJ finds that the claimant's RFC would not prevent him from performing the

demands of his past relevant work, then the claimant is determined to be able to work and the claim is denied.  See id.; 20 C.F.R. § 404.1560(b).

In assessing a claimant's RFC, the stage of the step four analysis at issue in this case,[6] the ALJ reviews the medical evidence regarding the claimant's physical limitations as well as the claimant's own description of his physical limitations.  See Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir. 1996).  Where the claimant has shown he suffers from an impairment that could reasonably be expected to produce the pain alleged, the ALJ must take into consideration the claimant's subjective evaluation of his pain and of the limitations that his pain may impose on his ability to work.  See Avery v. Secretary of Health and Human Services, 797 F.2d 19, 21 (1st Cir. 1986).  However, the ALJ is not required to give credit to the claimant's subjective evaluations of pain if they are inconsistent with the medical findings that exist regarding his condition.  See Dupuis v. Secretary of Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989).  Rather, after making specific findings[7] detailing the inconsistencies between the claimant's

---

[6]  Spear does not contest the ALJ's determination that his past relevant work as a deputy director of a municipal public works department required only a sedentary functional capacity as described by 20 C.F.R. § 404.1567(a) and U.S. Dep't of Labor, Dictionary of Occupational Titles 188.117-030 (4th ed., rev. 1991).

[7]  In determining the credibility of the claimant's allegations regarding pain, the ALJ considers such factors as: (1) the nature, location, onset, duration, frequency, radiation, and intensity of the pain; (2) the precipitating and aggravating

allegations of pain and the objective medical findings, the ALJ may discount the allegations in determining the claimant's RFC. See id.

In the instant case, Spear asserts that even if his back impairment does not meet or equal the severity of a listed impairment, his impairment causes him a great enough level of pain so as to reduce his RFC to the point where he cannot perform his past relevant work. Spear argues that the ALJ erred in finding otherwise and, therefore, erred in finding him ineligible to receive SSDI benefits. However, substantial evidence exists in the record supporting the ALJ's determination that Spear has the capacity to perform light work, see 20 C.F.R. § 404.1567(b),[8] despite his allegations of pain and, thus, that Spear is able to perform the duties of his previous job as a deputy director of a municipal public works department, a job which requires only a sedentary functional capacity, see 20 C.F.R. § 404.1567(a).[9] Such evidence is provided by the medical evidence and opinions

_____

factors; (3) the type, dosage, effectiveness, and adverse side-effects of any pain medications; (4) the non-medication forms of treatment for relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities. See Avery, 797 F.2d at 29.

[8] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" frequent "walking or standing;" and frequent "sitting . . . with some pushing and pulling of arm or leg controls." See 20 C.F.R. § 404.1567(b). Further, "[i]f someone can do light work, . . . [he ordinarily] can also do sedentary work." Id.

[9] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;" occasional "walking and standing;" and frequent "sitting." See 20 C.F.R. § 404.1567(a).

-16-

contained in the record as well as by Spear's own description of his physical capabilities. See Manso-Pizarro, 76 F.3d at 17.

1.    Medical Evidence Regarding Plaintiff's RFC

The medical evidence and opinions contained in the record provide substantial support for the ALJ's finding that Spear's pain does not reduce his current RFC so as to prevent him from performing his past relevant work. See Gordils v. Secretary of Health and Human Services, 921 F.2d 327, 329 (1st Cir. 1990) (ALJ can render common-sense judgments about a claimant's RFC based on review of the medical findings). The record reveals that Spear's episodes of severe lower back muscle spasm were short in duration, lasting at longest one week, and responded well to treatment. Where a claimant's periods of severe pain are of short duration and respond well to treatment, the ALJ properly may discount the credibility of the claimant's allegations that his pain prevents him from working. See Adams, 833 F.2d at 511.

The record also reveals that Spear's severe muscle spasms occurred only intermittently, at six-month to one-year intervals with an eighteen-month hiatus immediately following the alleged onset date of disability. In between these periods of severe muscle spasm, Spear required only mild analgesics to control any residual pain and needed to take such medication only on an intermittent basis. Where a claimant's episodes of severe pain occur only infrequently and where the claimant needs little or no medication to control pain in between these episodes, again, the ALJ properly may discount the credibility of the claimant's

-17-

allegations that his pain prevents him from working.  See <u>Irlanda</u>
<u>Ortiz</u>, 955 F.2d at 769 (intermittent occurrence of back spasm is
evidence that pain does not interfere with capacity to work);
<u>Albors v. Secretary of Health and Human Services</u>, 817 F.2d 146,
148 (1st Cir. 1986) (use of only mild analgesic to control pain
is evidence that pain is not disabling).

In addition, at or shortly after his discharge from the
hospital, Spear's physicians routinely noted that he did not need
to be under continuing observation but could return to his pre-
spasm activities.  Such opinions indicate that each of
plaintiff's episodes of debilitating muscle spasm ended
approximately at the time of discharge.  <u>See, e.g.</u>, <u>Irlanda</u>
<u>Ortiz</u>, 955 F.2d at 769 (treatment plan that did not provide for
regular monitoring serves as an indication that claimant's back
spasm did not produce unrelenting pain).  Thus, these opinions
provide another basis upon which the ALJ could properly discount
the credibility of Spear's allegations that his pain prevents him
from working.  <u>See, e.g.</u>, <u>Evangelista v. Secretary of Health and</u>
<u>Human Services</u>, 826 F.2d 136, 144 (1st Cir. 1987) (ALJ may "piece
together the relevant medical facts from the findings and
opinions of multiple physicians").

Further, the RFC assessments completed by two the non-
examining DDS physicians also support the ALJ's conclusion that
plaintiff's pain did not interfere with his ability to return to
his prior work.  <u>See</u> <u>Berrios Lopez v. Secretary of Health and</u>
<u>Human Services</u>, 951 F.2d 427, 431-32 (1st Cir. 1991) (ALJ may

-18-

rely on non-examining physician's opinion as evidence of lack of disability, particularly where such an opinion is supported by other evidence in record). After reviewing Spear's entire medical record to date, both DDS physicians found that despite his back condition, Spear could: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) sit, stand, and walk each for up to six hours per day; (3) push and pull without limitation; and (4) occasionally climb, balance, stoop, kneel, crouch, and crawl. These reports provide a basis on which the ALJ could find Spear retained the capacity to do light work pursuant to 20 C.F.R. § 404.1567(b), see Gordils, 921 F.2d at 329, and, when considered in conjunction with the other medical evidence of record, on which the ALJ could discount the credibility of Spear's allegations that his pain prevents him from working. See Berrios Lopez, 951 F.2d at 431-32.

2. Plaintiff's Description of His Physical Capabilities

Finally, Spear's own description of his physical capabilities as contained in the record also substantially supports the ALJ's finding that Spear's pain did not reduce his current RFC so as to prevent him from performing his past relevant work. See Ortiz, 890 F.2d at 523 (ALJ may rely upon claimant's own description of capabilities when assessing the credibility of claimant's allegations of pain); Delsie v. Shalala, 842 F. Supp. 31, 35 (D. Mass. 1994) (same). After each episode of spasm, Spear returned to his pre-spasm activities -- i.e., either to his pre-spasm employment or his pre-spasm

performance of household chores, shopping, and hobbies. More-over, Spear testified that his condition does not prevent him from reading newspapers and books or from actively participating in charitable fund-raising auctions and cookouts.

Such testimony again provides a basis on which the ALJ could discount the credibility of plaintiff's allegations that his pain prevents him from working. See Avery, 797 F.2d at 29; see, e.g., Ortiz, 890 F.2d at 523 (ALJ properly discounted credibility of claimant's allegations of lower back pain where claimant admitted "that he spent most days walking in the woods behind his house"); Barrientos, 820 F.2d at 3 (ALJ properly discounted credibility of claimant's allegations of lower back pain where claimant admitted she could cook, wash dishes, and do laundry); Delsie, 842 F. Supp. at 35 (ALJ properly discounted credibility of claimant's allegations of back pain where claimant admitted she could perform household chores, shop, and drive).

Based on the medical evidence and opinions contained in the record as well as Spear's own assessment of his capabilities, I find that substantial evidence exists supporting the ALJ's determination that Spear has the capacity to perform light work despite his allegations of pain and, thus, is able to perform the duties of his previous job as a deputy director of a municipal public works department, a job which requires only a sedentary functional capacity. Consequently, the ALJ did not err in finding Spear able to work at step four of the five-step sequential evaluation and properly denied his claim.

-20-

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the decision of the Commissioner is affirmed, and plaintiff's motion to reverse the Commissioner's decision is denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

January 5, 1998

cc:  Donald A. Spear, pro se
     David Broderick, AUSA