Sidney **SINGLETARY**, a minor,
by Hope **FERNANDES**, his
mother, Plaintiff,

v.

Jo Anne **BARNHART**,[1] Commissioner,
**Social Security Administration,**
Defendant.

No. 01–CV–10649–MEL.

United States District Court,
D. Massachusetts.

Jan. 18, 2002.

Michael J. Kelley, Boston, MA, for Plaintiffs.

George B. Henderson, U.S. Attorney's Office, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

LASKER, District Judge.

The issue in this case is whether substantial evidence supports the Social Security Commissioner's determination that Sidney Singletary is not a disabled child pursuant to the Listing of Impairments in Appendix 1 of SubPart P, 20 C.F.R. Part 404. 20 C.F.R. §§ 416.924, 416.925 (2001).

Sidney moves to reverse or remand the decision of the Commissioner, and the Commissioner moves to affirm her decision. The motion to remand is granted. The motion to affirm the Commissioner's decision is denied.

1. Jo Anne Barnhart became the Commissioner of the Social Security Administration on November 9, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Jo

Anne Barnhart should be substituted for Larry G. Massanari as the defendant in this suit. 42 U.S.C. § 405(g).

## I.

Sidney Singletary was born November 30, 1990, and lives in West Wareham, Massachusetts. It is undisputed that Sidney suffers from the severe and incurable disease of Becker's Muscular Dystrophy. Becker's Muscular Dystrophy causes weakness in the muscles close to the torso. The symptoms of the illness include limited endurance, easy fatiguability, difficulty running, and problems with gait, balance, and motor skills. On February 26, 1998, Sidney's mother, Hope Fernandez, filed an application for Supplemental Security Income (SSI). After a rather haphazard hearing before the Administrative Law Judge (ALJ), Sidney's application was denied on May 26, 1999.

To ascertain whether a child is disabled, the Social Security Administration (SSA) has established a three-step sequential process enumerated in 20 C.F.R. § 416.924:(1) the child cannot be performing substantially gainful activity; (2) the child's impairment must be severe; (3) the child's impairment must meet one of the prescribed listings in the Listing of Impairments (Appendix 1 of SubPart P, 20 C.F.R. Part 404). The Listings establish rigid criteria defining disabled children. The ALJ found that Sidney met both "step one" and "step two" of the sequential analysis. He held that Sidney had not met his burden of proof on step three, however, because Sidney's "marked limitation in motor development" did not presently meet any Listing.

An impairment "meets" the Listings only when it "manifests the specific findings described in the set of medical criteria" for a particular listed impairment. *Nater v. Secretary of Health and Human Services,* 933 F.2d 76, 78 (1st Cir.1991).

In essence, this case concerns whether Sidney's physical state as of the date of the ALJ's decision was severe enough to meet a listing. At oral argument both parties agreed that Listing which best matches Sidney's condition is Listing 101.03 A, quoted below:

> 101.03 Deficit of musculoskeletal function due to deformity or musculoskeletal disease and one of the following:
>
> A. Walking is markedly reduced in speed or distance despite orthotic or prosthetic devices; or
>
> B. Ambulation is possible only with obligatory bilateral upper limb assistance (e.g., with walker, crutches); or
>
> C. Inability to perform age-related personal self-care activities involving feeding, dressing, and personal hygiene.

In light of this terminology, a clear medical diagnosis of Sidney's motor function appears to be necessary to determine whether Sidney meets Listing 101.03(or any others relevant).[2]

## II.

Sidney moves to remand and reverse the ALJ's decision. He argues that his condition meets one of the Listings. Sidney contends that the ALJ failed to give appropriate weight to or simply misunderstood the medical evaluations made by his treating physician, Dr. Darras. Sidney considers the ALJ's decision flawed by its own contradictions. He argues, "Specifically, the ALJ concluded in the hearing decision that 'a marked limitation in motor function is established' but in the very next paragraph stated that '[t]he claimant does not have an impairment or combination of im-

---

**2.** This Memorandum considers Sidney's possible meeting of Listing 101.03 as the grounds for remand; by doing so, however, it does not foreclose any potential finding on remand that Sidney meets another Listing.

pairments which results in marked and severe limitations.' on his motor functioning." (Pl.'s Motion to Remand and Reverse, at 11). As is explained more fully below, the "smoking gun" in this case, the Darras report that Sidney's motor functioning was markedly impaired, was not physically delivered to the ALJ until after the administrative hearing, because Sidney's attorney forgot to bring it to the hearing.

Sidney also challenges the ALJ's reliance on the opinion of the medical examiner present at the hearing, Dr. Orson, to the exclusion of the better informed opinions of his treating physician, Dr. Darras. Sidney asserts that unlike Dr. Darras, who had examined him many times, Dr. Orson never examined him at all. He stresses that Dr. Darras is a board certified pediatric neurologist and geneticist from Children's Hospital of Boston, whereas Dr. Orson is trained in endocrinology and specializes in diabetes. Dr. Darras ordered the objective testing of Sidney and composed the medical notes in the record, and in fact, Dr. Orson relied entirely on Dr. Darras' opinions in reaching his decision. Thus, according to Sidney, Dr. Darras' medical opinion should be afforded greater weight than that of Dr. Orson.

Sidney further alleges that the ALJ failed to consider adequately his mother's testimony. Ms. Fernandes testified that Sidney's condition was worsening, and noted that "he can run but ... he can't keep up with the other kids." (Hr'g Tr. 3). She further testified that Sidney falls up to three times a day. (Hr'g Tr. 3, 4).

The Commissioner argues that substantial evidence supports the ALJ's decision. She reasons that Sidney's medical evidence did not presently meet a Listing. The ALJ acknowledged that Sidney will almost certainly meet these Listings some time in the future, but explains that a future likelihood of disability is not sufficient to entitle an applicant to relief. The Commissioner defends the ALJ's interpretation of the medical record. She stresses that the last time Dr. Darras conducted a detailed, in-person examination of Sidney, Dr. Darras did not find any significant limitation on Sidney's ability to walk or run. (February 23, 1998). Moreover, adds the Commissioner, at a follow-up visit on May 18, 1998, Dr. Darras asserted that Sidney was "holding his own without evidence of significant motoric decline."

As the Commissioner understands the record, the last time Dr. Darras examined Sidney and directly observed any changes in his condition must have been the follow-up visit in May 1998. Therefore, the Commissioner questions the evidentiary weight that should be given Dr. Darras' "assessment" of Sidney dated April 13, 1999. The Commissioner describes the contemporary faxed "assessment" as a mimeographed form, with multiple choice questions. To one of these questions, Dr. Darras chose an answer indicating that Sidney's motor function was of "marked" impairment. (See Tr. Ex. 7F at 2, Hr'g Record at 118).[3]

The Commissioner does not dispute Dr. Darras' opinion that a marked limitation in motor function is established; however,

---

**3.** Question number 3, of the document entitled "Format and Case Summary for a Child" asks:

    3. Motor Development: (check one) ... No Evidence of Limitation; Less Than Moderate; Moderate; Marked; Extreme. This fax appears to have been transmitted to multiple parties: from attorney Kelley to the ALJ; from Dr. Darras to Mr. Kelley; and from Kelley to Darras. But this is uncertain, since it is impossible to determine on its face. In any event, it was received after the April 15, 1999 administrative hearing and labeled Exhibit 7F. Dr. Darras checked the "Marked" option.

she argues that Dr. Darras' checkmark on the form should not be read as proving either medical or functional equivalence to meet a Listing as required. The Commissioner maintains that the ALJ afforded proper weight to Dr. Darras' April 1999 "assessment," but she concludes that the Medical Examiner, Dr. Orson, in reviewing this assessment (after the hearing) reasonably found that Dr. Darras' new report did not meet a Listing.

### III.

There is little doubt that Sidney's health and his symptoms changed at least to some degree between the date he first applied for SSI in February 26, 1998, and the date of his administrative hearing, April 15, 1999. Almost four years later, the question whether Sidney qualifies for SSI remains unknown due to an incomplete record.

As dictated by the Listings, determining whether Sidney's illness medically or functionally constitutes a disability, depends, in large part, upon reliable medical evidence. Therefore, the need for a recent medical evaluation is especially acute in a case such as this, because the condition of children afflicted with muscular dystrophy rapidly deteriorates within a short time. However, the decision that Sidney was not disabled was not based on current medical evidence. On April 15, 1999, the day of the administrative hearing, the most recent medical evaluation before the ALJ was conducted on May 18, 1998, nearly a year before the hearing.

As noted above, Sidney's attorney forgot to bring to the hearing an updated evaluation of Sidney's condition; this added to the confusion. (Hr'g Record ex. 7F/ Court Tr. at 117). Sidney's attorney undertook to fax that evaluation to the ALJ following the hearing, and the ALJ agreed to review it. Consequently, much of the testimony given, and questions asked, at the hearing consisted of abstract hypotheticals concerning the possible weight to be given a medical evaluation which most of the participants had never seen, including of course, the ALJ. As a result, read in its entirety, the hearing offers little guidance for the fact finder.

It is possible, though not certain, that the flaws in the hearing could have been rehabilitated by an ALJ opinion analyzing the evidence in reasonable detail and explaining his analysis of it. But the cursory ALJ decision of April 15, 1999, does not shed light or clarity on transcript of the haphazard administrative hearing.

For example, the ALJ did not sufficiently explain what weight he gave Dr. Darras' opinion that Sidney suffered "marked impairment." Nor does the opinion analyze Dr. Darras' finding that Sidney had marked impairment of his motor functioning. According to Sidney's lawyer, the form Dr. Darras completed on April 13, 1999 was a standard Social Security Administration form. Under the circumstances, then the ALJ should have been familiar with the form and with the legal significance of a treating physician's finding of "marked impairment" in motor skills. However, the ALJ's brief opinion did not illuminate why he found that Sidney did not meet Listing 101.03, which covers individuals whose "walking is markedly reduced in speed or distance despite orthotic or prosthetic devices."

In fact, only once does the ALJ's decision refer to Dr. Darras' April 13, 1999 opinion that Sidney suffered marked impairment. He wrote, "Dr. Darras recently completed a child functional assessment wherein he described no limitations in any domain/functioning *except for marked limitation in motor condition.*" (Administrative Decision at 2) (emphasis added). The ALJ failed to explain how he resolved the

conflicting opinions of Doctors Darras and Orson, which makes it impossible for this Court to determine whether or not sufficient evidence existed to support the ultimate conclusion.

Accordingly, the Commissioner's decision is remanded to the ALJ to conduct a hearing with the complete medical record, thus giving the witnesses, the Medical Examiner, and the ALJ an opportunity to form reasonable, concrete opinions as to whether Sidney qualifies for disability insurance.

## *IV.*

The motion to affirm the Commissioner's Decision is denied. The motion to remand is granted.

It is so ordered.